# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | Martin C. Ashman |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2646 | **DATE** | 12/1/2003 |
| **CASE TITLE** | Donald Plattner vs. Edge Solutions, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter memorandum opinion and order. Defendant's motion to stay proceedings pending action to compel arbitration [8-1] is denied in part and granted in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | JUDGE GOTTSCHALL | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 0 2 2003 | 31 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 12/1/2003 | |
| | | | date mailed notice | |
| IS | courtroom deputy's initials | 03 DEC -2 AM 3:18 | IS | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DONALD PLATTNER, )
an Illinois resident, )
)
          Plaintiff, ) Case No. 03 C 2646
)
v. ) Judge Martin C. Ashman
)
EDGE SOLUTIONS INC., )
a New York corporation, )
)
          Defendant. )

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Defendant's Motion to Stay Proceedings Pending Action to Compel Arbitration.[1] For the reasons set forth below, the Court finds that Defendant's motion should be denied in part and granted in part.

### I. Background

Plaintiff Donald Plattner filed this action against Edge Solutions, Inc., alleging violations of the Credit Repair Organization Act, 15 U.S.C. § 1679, *et seq.*, and breach of fiduciary duty. Edge denies the allegations.

Edge holds itself out as a consumer advocacy company that assists its clients to lead debt free lives. In September 2000, Plattner contacted Edge to explore options to resolve financial difficulties he had been experiencing due to consumer debt. Edge's customer support staff told

---

[1] This matter comes before this Court pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.1.

31

Plattner that the company could provide him with debt counseling and credit repair services and sent him follow-up material describing the program that it recommended for him. The program Edge recommended was called the Debt Meltdown Program. Under this program, Plattner was to make a single monthly payment into a personal bank account. Edge would negotiate settlements with Plattner's creditors, and, once a settlement was reached, it would pay the creditor out of the accumulated funds in the bank account. Edge took a fee equal to forty percent of the money it had "saved" Plattner by negotiating down the amount that he owed.[2] Plattner signed a document called the "Debt Meltdown Program Agreement Letter" ("Agreement") which set forth these terms on December 22, 2000. The two page Agreement also contained a provision right above Plattner's signature which reads as follows:

> In The [sic] event of any claim, dispute or controversy between the parties hereto and relating to the validity, construction, performance, breach or termination of this Agreement or otherwise, both parties agree to submit such claim, dispute or controversy to arbitration in Suffolk County, New York in accordance with the rules of the American Arbitration Association ("AAA"). The Arbitrator shall be selected by the mutual agreement of the parties and shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or in any part of this Agreement is void. The arbitrator's decision shall be final and binding upon the parties.

The relationship between Plattner and Edge deteriorated rapidly. Plattner alleges that his creditor Citibank told Edge that it was going to sue Plattner if the payments on his Citibank

---

[2] Edge also took a fee of $49.95 each month from Plattner's account for a "Debt Free Life Membership and Coaching Program." It described the service as "enhanc[ing] the overall Program experience for the client and to educate and inform the client on various tools regarding their concerns."

- 2 -

account were not brought up to date. Plattner maintains that he was not aware that Citibank had threatened to sue him because Edge insisted that all creditors deal directly with it. He also alleges that Edge did not make payments on the Citibank account because Citibank was not willing to negotiate a lower debt and Edge would not collect any fees. In June 2001,[3] Citibank sued Plattner. Furthermore, according to Plattner, although Edge told him that it would no longer provide services to him after he was sued by Citibank, it continued to take the $1000 from his personal account, but failed to use this money to complete payments on a settlement with Household Bank that it had negotiated.

Plattner filed suit against Edge in the Northern District of Illinois. Edge responded by filing the current motion to stay the proceedings pending an action to compel arbitration in New York.[4] Plattner objected to the motion to stay, and after both parties filed briefs in support of their respective positions, an oral argument was held. At the oral argument, this Court gave the parties the additional opportunity to further brief the issue of the enforceability of the arbitration provision contained in the agreement between Edge and Plattner. In the meantime, before the briefing schedule set by this Court had expired, Edge sought a temporary restraining order and preliminary injunction in the Supreme Court for the State of New York preventing Plattner from further prosecuting the proceedings in the Northern District of Illinois. The New York court

---

[3] The complaint alleges that Citibank sued Plattner in June of 2000, but this appears to be a typographical error as Plattner did not enter into a business relationship with Edge until December 2000. (See Compl. ¶ 19 ("In June 2000, while Defendant was managing Plaintiff's Edge Account, Plaintiff was sued by Citibank.").) Regardless, the resolution of this factual question is not necessary to decide the instant motion.

[4] Edge also contemporaneously filed a motion to dismiss, or in the alternative, to transfer venue which, by agreement, has not been briefed nor argued, and is not the subject of this memorandum opinion and order.

granted the TRO and issued a rule to show cause why Edge's application for a preliminary injunction should not be granted. Plattner, in turn, filed an emergency motion to temporarily and preliminarily enjoin enforcement of the New York state court order. Judge Gottschall granted the motion for a TRO on November 11, 2003, and granted the preliminary injunction on November 21, 2003. A second oral argument on Edge's motion to stay these proceedings was held by this Court on November 18, 2003.

## II. **Discussion**

Edge asks this Court to stay proceedings in this case pending the outcome of an action to compel arbitration in New York. Edge argues that a court in New York is the proper place to bring the motion to compel arbitration because the Agreement governing this dispute contains a forum selection clause and only a court in the selected forum can issue an order compelling arbitration pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, ("FAA"). *See Arnold v. Goldstar Fin. Sys.*, No. 01 C 7694, 2002 WL 1941546, at *7 (N.D. Ill. Aug. 22, 2002) (citing *Snyder v. Smith*, 736 F.2d 409, 418-20 & n.8 (7th Cir. 1984)). Plattner, also relying on *Arnold*, responds that the arbitration clause is unenforceable because it is unconscionable, and therefore this Court should not stay these proceedings. *See id.* at *9-10 (finding an arbitration clause unenforceable where the costs of the arbitration would be prohibitively expensive and construing a motion to compel arbitration as a motion to stay proceedings and denying said motion).[5]

---

[5] We do not find it necessary to reach Plattner's remaining argument that he did not knowingly waive his right to a trial by jury. As will be explained, this is a defense that should be
(continued...)

-4-

Although we agree with the law of the *Arnold* case, we find that a recent thoughtful decision not cited by either party is more persuasive for our initial analysis because it contains one factual similarity to the instant case which was not present in *Arnold* – a provision within the arbitration clause stating that the arbitrator shall have the exclusive authority to resolve any disputes relating to the enforceability of the Agreement, including the enforceability of the arbitration clause itself. *See Carbajal v. Household Bank, FSB*, No. 00 C 0626, 2003 WL 22159473, at *2 (N.D. Ill. Sept. 18, 2003).[6]

In *Carbajal*, the defendants filed motions to compel arbitration based on a broadly-worded arbitration provision found in the agreement between the plaintiff and the defendants. The arbitration provision included a clause that "any claim or dispute . . . including the validity or enforceability of this arbitration provision or any part thereof . . . shall be resolved, upon the election of either party, by binding arbitration" which the court referred to as the "validity and enforceability" clause. 2003 WL 22159473, at *2. The plaintiff objected to the motion to compel arbitration, arguing, in pertinent part, that the entire agreement as well as the arbitration provision contained therein were induced by fraud and were unconscionable and therefore unenforceable. The defendant replied that the enforceability of the arbitration provision should be decided by the arbitrator pursuant to the terms of the "validity and enforceability" clause.

---

[5](...continued)
brought before the arbitrator.

[6] This case has been appealed to the Court of Appeals for the Seventh Circuit.

In resolving this issue, the court first noted that just as parties can agree to arbitrate a dispute ("arbitrability"), they can also agree whether an arbitrator or the court will decide arbitrability (referred to as the "who decides" question). *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). The question for the court becomes whether the parties agreed that the arbitrator would decide if a dispute should be arbitrated. *Air Line Pilots Ass'n, Int'l v. Midwest Express Airlines, Inc.*, 279 F.3d 553, 555 (7th Cir. 2002) (while the arbitrability question is usually for a court, "parties to a contract can if they wish assign the determination of the arbitrability of a dispute to an arbitrator – but then the question of whether they have done that is for the court").

The court in *Carbajal* then turned to the Supreme Court case of *Prima Paint Corp. v. Flood & Conklin Mfg.*, 388 U.S. 395 (1967). In *Prima Paint*, the Court held that an arbitration clause is separable from the contract in which it appears. *Id.* at 402. In other words, under this concept of "separability," an arbitration provision might be enforceable even if the underlying contract in which it appears is not. The court should decide any defenses relating to the formation of the arbitration provision, but, if it is enforceable, any defenses relating to the formation of the "contract generally" should be decided by the arbitrator. *Id.* at 404.

The court in *Carbajal* extended this holding, and held that two levels of separability were appropriate: "Not only is the arbitration clause separable from the larger container contract, but the "who decides" clause is separable from the larger arbitration provision." 2003 WL 22159473, at *7. Under this approach, the court first determined whether the "validity or enforceability clause" was enforceable on its own terms as a separate contract. *Id.* at *8. The plaintiff had failed to argue that the "validity or enforceability" clause was unenforceable, and the court could

not find any reason to not enforce it. *Id.* (noting that "we cannot see how one could view this clause standing alone as so one-sided and oppressive as to shock the conscience"). Because this question was answered in the affirmative, the motion to compel arbitration was granted, and the remaining issues relating to arbitrability (including whether the entire arbitration provision was enforceable) were for the arbitrator to decide. *Id.*

Without losing sight of the fact that this is a motion to stay rather than a motion to compel as in *Carbajal*, we nevertheless come to the conclusion that the first issue in this case, which neither side argued, is whether the "who decides" clause in the Agreement is enforceable. If it is, then the issue of the enforceability of the arbitration provision (which we normally would address in order to decide the motion to stay) would be left up to the arbitrator. Plattner would have the opportunity to argue the same defenses in front of the arbitrator that he has argued in front of this Court. Thus, we will enforce the "who decides" clause, unless the clause could be revoked upon grounds that exist at law or in equity for the revocation of any contract. *See c.f.* 9 U.S.C. § 2 (arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"); *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 684-686; *Carbajal*, 2003 WL 22159473, at *8. Because the Agreement contains a choice of law provision,[7] we find that New York state law applies. *See Stone v. Doerge*, 328 F.3d 343, 345 (7th Cir. 2003) (affirming holding of trial court that most interpretive

---

[7] There is no reason to find that the choice-of-law provision is unenforceable because parties can agree that state rather than federal law controls the issues of "who decides" and arbitrability. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 ("The choice-of-law provision, when viewed in isolation, may reasonably be read as merely a substitute for the conflict-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship.)

disputes must be resolved under New York state law pursuant to agreement by the parties, unless the state laws give special treatment to arbitration agreements in which case they are inapplicable).

Facially, it appears that the "who decides" clause should be enforced. But, there is one important difference between *Carbajal* and this case. In *Carbajal*, any participatory arbitration hearing would take place in the federal judicial district in which the plaintiff lived. 2003 WL 22159473, at *2. Thus, there was no undue burden on the plaintiff. In this case, the arbitrator, who should decide the enforceability of the arbitration provision, would be in New York, because according to the terms of the Agreement, the arbitration must be brought in Suffolk County, New York. This raises arguments that the "who decides" clause is unenforceable as unconscionable similar to the arguments brought by Plattner when he argued that the entire arbitration provision was unenforceable.

A contract is unconscionable when entered into if it was both "procedurally and substantively unconscionable when made – i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988) (internal quotations omitted). Under the procedural element of unconscionability, Plattner must show that deceptive or high-pressure tactics were employed during the contract formation process, that fine print was used in the contract, that he is inexperienced or that there was disparity in bargaining power. *See id.* Plattner has a difficult time meeting this hurdle. He claims that he did not read the arbitration provision (of which the "who decides" clause is a part), that the provision was hidden in twelve pages of information, and that it was misleadingly placed

in a section titled "Other Programs and Services." Additionally, by reason of the Agreement being a form contract, it appears to be a contract of adhesion. However, the contract was mailed to Plattner, he had time to review it at his leisure, there is no evidence that he was under any pressure to return the Agreement without fully reading the documents, the provision is written in normal typeface, and it appears directly above a statement that he has reviewed the terms of the Agreement which also warns him in all capital letters: "Do not sign [this Agreement] unless you have carefully read and understood it in its entirety." Some disparity in bargaining power was present, as Plattner is an unsophisticated consumer with severe financial difficulties and there is no evidence what his other options might have been besides bankruptcy. *See Ranieri v. Bell Atlantic Mobile*, 759 N.Y.S.2d 448, 449 (N.Y. App. Div. 2003) (inequality of bargaining power alone does not invalidate a contract as one of adhesion where the purchase can be made elsewhere).

Nevertheless, in exceptional cases, a provision in a contract may be so outrageous that it should be held unenforceable on the ground of substantive unconscionability alone. *Gillman*, 534 N.E.2d at 829; *Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 569, 575 (N.Y. App. Div. 1998). The question of substantive unconscionability "entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged . . . ." *Gillman*, 534 N.E.2d at 829. We must consider whether the "who decides" clause requiring Plattner to choose an arbitrator in New York to determine issues of arbitrability falls in this category. We answer this question in the affirmative. Plattner is a resident of Illinois. He contacted Edge for assistance in dealing with his consumer debt. Edge knew, at the time the bargain was entered into, that Plattner was in dire financial straits. Yet, it

inserted a clause into its form contract requiring Plattner to travel to New York to arbitrate even the dispute of whether the arbitration clause was enforceable in the first place. Plattner has asserted, and we believe, that the costs of such a trip, especially when combined with the costs of arbitration[8] would be prohibitively expensive, and serve to prevent him from seeking relief on any claims he might have against Edge. Edge, by this "who decides" clause, effectively insulated itself and immunized itself from any claims against itself by Plattner. Allowing an arbitrator in New York to decide whether the location of arbitration in New York is unconscionable is absurd because the harm to Plattner by reason of unconscionability would have occurred. Plattner is unable to litigate in New York. For this reason, the "who decides" clause unreasonably favors Edge, and it is unconscionable and therefore unenforceable.

This finding is consistent with Judge Gottschall's decision in *Arnold*. In that case, the arbitration (excluding travel costs to Florida) would have cost each plaintiff in the class at least $2550 for the filing fee plus half of the arbitrator's fee. 2002 WL 1941546, at *10. The court found that the plaintiffs, who were persons with debt problems, had met their burden of showing that these expenses were prohibitive and it denied the defendants' motion to stay proceedings.[9]

---

[8] Plattner has estimated the total cost of the trip and the arbitration to be between $1,340 and $2,540. These estimates appear to be reasonable and we find that he has met his burden of showing the likelihood of incurring such costs. *See c.f. Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000) (holding that a party seeking to invalidate an arbitration agreement on the ground that such arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs). Plattner has also sworn that such costs are prohibitively expensive and we find this assertion that he is unable to afford these costs credible as he was recently so close to bankruptcy that he was forced to seek out a credit repair and debt counseling organization.

[9] As mentioned above, the court construed the defendants' motion to compel arbitration as a motion to stay proceedings pending arbitration.

*Id.* It also has a sound basis in New York law under which excessive fees may be grounds for finding an arbitration provision unenforceable. *See Brower*, 676 N.Y.S.2d at 574 ("Barred from resorting to the courts by the arbitration clause in the first instance, the designation of a financially prohibitive forum effectively bars consumers from this forum as well; consumers are thus left with no forum at all in which to resolve a dispute.")

Neither side has requested that, in the alternative, the arbitration take place in a location closer to where Plattner lives. Plattner only argues that the travel to New York is prohibitively expensive when combined with the arbitration fees, but he does not argue that the arbitration fees of $500 to $1,550, standing alone, are prohibitively expensive. Because it is only the portion requiring a New York arbitrator to be selected that makes the "who decides" clause unconscionable, we find that if this portion were separated out, the remainder of the "who decides" clause would be enforceable. *See c.f. Brower*, 676 N.Y.S.2d at 575 (finding that portion of arbitration provision requiring arbitration before a certain arbitration association with excessive fees was unconscionable, but remanding case to trial court with instruction to substitute a different arbitration association and enforce the remainder of the arbitration provision). Under the analysis we have used, an arbitrator should decide arbitrability questions including whether the arbitration provision (absent the location) is enforceable, but the arbitrator should be located within a reasonable distance from where Plattner resides. Therefore, we find that Edge's motion to stay these proceedings pending the outcome of a motion to compel arbitration in New York is denied. However, we will stay these proceedings pending arbitration in Cook County, Illinois, in accordance with the balance of the arbitration clause and in accordance with the terms of the Agreement.

### III. Conclusion

For the foregoing reasons, the Court denies Defendant's motion to stay these proceedings pending an action to compel arbitration in New York, but stays these proceedings pending arbitration in Cook County, Illinois.

**ENTER ORDER:**

*[signature]*

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: December 1, 2003.

Copies have been mailed to:

| | |
|---|---|
| JAMES SHEDDEN, Esq.<br>MICHAEL S. HILICKI, Esq.<br>LINDA R. WALSH, Esq.<br>TONY KIM, Esq.<br>Beeler, Schad & Diamond, P.C.<br>332 South Michigan Avenue<br>Suite 1000<br>Chicago, IL 60604<br><br>DAVID J. PHILIPPS, Esq.<br>MARY E. PHILIPPS, Esq.<br>Gomolinski & Philipps, Ltd.<br>8855 South Roberts Road<br>Hickory Hills, IL 60457<br><br>Attorneys for Plaintiff | DAVID L. CLARK, Esq.<br>11 South LaSalle Street<br>Suite 1000<br>Chicago, IL 60603-1207<br><br><br><br><br><br><br><br><br><br><br>Attorney for Defendant |